UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RANDY K. STRICKLAND, II,

Plaintiff,

v. Case No. 8:26-CV-792-KKM-SPF

AT&T SERVICES, INC.,

Defendant.
_______________________________________/

**REPORT AND RECOMMENDATION**

In March 2026, *pro se* Plaintiff Randy Strickland II, filed a complaint against AT&T Services, Inc.[1] ("AT&T"), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA") (Doc. 1). Before the Court is Defendant's Amended Motion to Compel Arbitration and Stay Proceedings (Doc. 29) to which Plaintiff filed a response in opposition (Doc. 36) and AT&T filed a reply in support (Doc. 39). For the reasons described below, the undersigned recommends that Defendant's motion be GRANTED.

## I. BACKGROUND

In his Complaint, Plaintiff alleges that in June 2021 he began working for AT&T as a Senior Talent Acquisition Manager in a remote-designated role. (Doc. 1, ¶¶ 20–21). In the summer of 2024, Plaintiff requested he be allowed to retain his remote-designation as an accommodation for his disabled status under the ADA which was approved. (Doc. 1, ¶¶ 25–29). However, in December of 2024, AT&T implemented return-to-office policies, and Plaintiff's accommodation was revoked. (Doc. 1, ¶¶ 30, 34). Plaintiff attempted to appeal the

[1] Plaintiff's Complaint also asserted claims against AT&T, Inc. who has since been dismissed from this matter. (Doc. 35.)

decision but ultimately was forced to resign. (Doc. 1, ¶¶ 43, 52–53). Accordingly, Plaintiff has brough the instant matter, alleging that AT&T violated multiple ADA provisions, forced his constructive discharge, and discriminated against him due to his disabled status.

Instead of answering Plaintiff's complaint, AT&T moved to compel arbitration. (Doc. 29). In its motion, AT&T argues that Plaintiff signed a Management Arbitration Agreement (the "Agreement") as part of his onboarding paperwork in May 2021, which bars the litigation of his claims in this Court and instead subjects the parties to binding arbitration.

In pertinent part, the Agreement provides:

> As a new member of our team, it's important you understand how disputes will be handled. This agreement is a condition of employment. You'll need to electronically sign the agreement.
> After reading and completing the information, be sure to click the "Submit" button at the bottom of the page.
>
> **Management Arbitration Agreement**
> ***Please carefully review this Management Arbitration Agreement.***
>
> **Summary**
> Under this Agreement, you and the AT&T company that employs you ("the Company") agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation….
>
> **How This Agreement Applies**
> This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 and following, and evidences a transaction involving commerce. This agreement applies to any claim that you may have against any of the following: (1) any AT&T company, (2) its present or former officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, and all successors and assigns of any of them, and this agreement also applies to any claim that the Company or any other AT&T company may have against you. Unless stated otherwise in this Agreement, covered claims include without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship, . . . termination, defamation, retaliation, discrimination or harassment and claims arising under . . . Americans with Disabilities Act.

(Doc. 29-1 at 9).

Pursuant to the Agreement, AT&T moves to compel arbitration. Plaintiff opposes the relief.

## II. LEGAL STANDARD

Arbitration is fundamentally "a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation and citation omitted). The Federal Arbitration Act ("FAA") provides, in relevant part, that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," and that a court shall order parties to proceed to arbitration if it finds they are subject to a valid arbitration agreement. 9 U.S.C. §§ 2, 4. The FAA requires that a court—upon motion by a party to an action in federal court—stay the action if it involves an "issue referable to arbitration under an agreement in writing." 9 U.S.C. § 3.

These FAA provisions reflect a "liberal federal policy favoring arbitration agreements."*CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quotation and citations omitted); *see also Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (same); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–21 (1985) (discussing the FAA's legislative history and the FAA's purpose of ensuring judicial enforcement of private arbitration agreements). Consistent with this policy, the FAA requires that courts "'rigorously' … 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)); *see also Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329–30 (11th Cir. 2014) (same).

In determining whether to compel arbitration under the FAA, courts consider: (1) whether there is a valid agreement to arbitrate between the parties, (2) whether the agreement covers the dispute, and (3) whether the right to arbitrate has been waived. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *Lane v. Gould & Lamb, LLC*, No. 8:14-cv-3116-T-30AEP, 2015 WL 3609108, at *1 (M.D. Fla. Apr. 21, 2015). The party resisting arbitration ultimately bears the burden of showing that the arbitration provision in question should not be enforced, *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000), and any doubt related to arbitrability must "be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

While the FAA controls the Agreement, the question of whether a binding contract to arbitrate exists at all, and if so, whether there are any viable defenses to enforcing it, is generally determined by state contract law. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995) ("States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'") (quoting 9 U.S.C. § 2); *Cartagena v. Martino-Villanueva*, 619 F. Supp. 3d 1145, 1156 (M.D. Fla. 2022) ("Since arbitration clauses are based in contract, courts generally apply state contract law to determine the scope and enforceability of an arbitration clause[.]") (citing *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183 (2019)).

## III. DISCUSSION

AT&T maintains that a valid agreement to arbitrate exists and Plaintiff's claims are subject to it. (Doc. 29). In Response, Plaintiff does not dispute the scope of the Agreement or signing it but rather argues that there is a genuine dispute of material fact as to whether AT&T

Services, Inc. can enforce the Agreement because it is unclear which AT&T entity employed Plaintiff. (Doc. 36 at 2).

### A. Existence of a Valid Arbitration Agreement

The Court rejects Plaintiff's assertion that the corporate entity with which Plaintiff contracted is ambiguous or unknown thus disturbing the validity of the Agreement. As stated above, Florida contract law governs the formation of a binding arbitration agreement, and the elements of such are offer, acceptance, consideration, and sufficient specification of essential terms. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

Here, AT&T made an offer to Plaintiff for the position of Senior Talent Acquisition Manager that was predicated upon completion of onboarding paperwork, including his review of and signature of the Agreement. (Doc. 29-1 at 9). The Agreement explicitly states in the introduction that it is the understanding of Plaintiff and "the AT&T company that employs [him]" that any claim arising within the contemplation of the Agreement will be resolved in arbitration. *Id.*

Though Plaintiff argues AT&T Services, Inc. has failed to properly establish it was the AT&T company that employed him, this assertion is contrary to the record before this Court. Indeed, the parties previously stipulated that AT&T Services, Inc. was Plaintiff's employer. (Doc. 29, n.1). This fact is supported by Plaintiff's own evidence and prior allegations. (*See* Doc. 72-2 (payroll stubs and correspondence denoting AT&T Services, Inc. as Plaintiff's employer); Doc. 1, ¶¶ 14, 15 (alleging AT&T Services, Inc. was his employer and former defendant AT&T, Inc. "controls relevant employment policies and practices"). Notably, in his response, Plaintiff does not maintain that AT&T Services, Inc. was not his employer. Instead, he simply maintains that AT&T Services, Inc. has not alleviated all doubts that it

was the specific AT&T entity that employed him.[2] Where, as here, Plaintiff has offered no competence evidence in rebuttal, the undersigned cannot find a genuine dispute concerning AT&T Services, Inc.'s status as the offeror. Moreover, notwithstanding the foregoing, the Agreement explicitly provides that it applies to any claim brought not only against the employing AT&T company but also to (1) any AT&T company and (2) the parent, subsidiary and affiliated entities of the employing AT&T company. (Doc. 29-1 at 9). Accordingly, even if this Court were to accept Plaintiff's assertion that AT&T Services, Inc. was not the offeror of the Agreement, which it has not, it does not affect the overall validity of the Agreement or AT&T Services, Inc.'s ability to enforce the Agreement against the claims brough by Plaintiff in this case.

Accordingly, an offer of employment was extended from AT&T which Plaintiff accepted through completion of the necessary onboarding paperwork, including signature of the Agreement. While Plaintiff argues in passing references that the onboarding paperwork was not a condition of his employment since he accepted the offer prior to signing the Agreement (Doc. 36 at 8), this is contradicted through the language of the Agreement itself. At the top of the CareerPath page containing the Agreement, it reads, "[t]his agreement is a condition of employment." (Doc. 29-1 at 9). Thus, proper offer and acceptance occurred, necessarily satisfying the first two elements of a valid agreement.

Next, the mutuality of the parties' agreement to arbitrate, as well as Plaintiff's continued employment with Defendant, constituted consideration under Florida law. *See Santos v. General Dynamics Aviation Servs. Corp.*, 984 So.2d 658, 661 (Fla. Dist. Ct. App. 2008)

---

[2] The undersigned notes that AT&T previously took the position AT&T Mobility Services LLC was Plaintiff's employer (Doc. 14, n. 1) but through further discovery has since corrected this position and filed an Amended Motion to Compel Arbitration (Docs. 27-2; Doc. 29 at 1)

(finding sufficient consideration to support an arbitration agreement because the agreement created a mutual obligation to arbitrate and plaintiff continued to work for defendant after receiving the dispute resolution policy); *Lemmon v. Lincoln Prop. Co.*, 307 F. Supp. 2d 1352, 1355 (M.D. Fla. 2004) (finding that mutuality of obligation renders the contractual provisions enforceable).

The last component of a binding contract under Florida law is sufficient specification of essential terms. Looking to the language of the Agreement, an explanation is provided for how the Agreement applies, to whom it applies, the limitations of its application, the process of arbitration and responsibilities of each party, and further discussion of arbitration in general and how it would be conducted. (Doc. 29-1 at 9-11). Accordingly, all the necessary terms of the Agreement are present and specified, and it is sufficiently clear to the parties the obligations that arise from such contract. Therefore, a valid arbitration agreement exists as all four elements of a contract are satisfied under governing Florida law.

**B. Scope of Arbitration Provisions**

Plaintiff's claims fall within the scope of the Agreement. The Agreement explicitly states coverage of "any claim" that Strickland may have against AT&T, or any of AT&T's affiliates or subsidiaries, and any claims "arising out of or related to your employment or termination of employment with the Company." (Doc. 29-1 at 9). Furthermore, the Agreement expressly asserts governance over disputes pertaining to the Americans with Disabilities Act that arise from employment with any AT&T company. *Id.*

Courts look to a plaintiff's complaint to determine if the allegations concern matters covered by an arbitration provision. *See Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 386 (11th Cir. 1996). In doing so, "due regard must be given to the federal policy favoring

arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). The presumption of arbitrability can only be overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Doubts are resolved in favor of arbitration. *Id*.

In the instant case, Plaintiff's complaint alleged violations of the Americans with Disabilities Act, and all discussed actions arise from or relate to his employment by AT&T Services, Inc. Therefore, these claims are expressly covered under the Agreement and fall within the scope of the arbitration provision.

### C. Waiver

The final element that must be considered when determining whether to compel arbitration under the FAA is whether the right to arbitrate has been waived. Waiver of the right to arbitrate can occur only where a party, under the totality of circumstances, has acted inconsistently with the right to arbitrate and that action caused prejudice to the other party. *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 (11th Cir. 2011). Here, AT&T has not engaged with the merits of Strickland's claims, and instead, immediately asserted its right to arbitrate such claims within the timeframe it was allotted to answer the complaint. Accordingly, AT&T has not waived its right to arbitration.

## IV. Conclusion

It is **RECOMMENDED**:

1. Defendant AT&T Services, Inc.'s Amended Motion to Compel Arbitration and Stay Litigation (Doc. 29) be GRANTED.

2. The Court direct the parties to participate in arbitration consistent with the Agreement.
3. The Court stay this case pending the completion of arbitration. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceedings."); and
4. The Court require the parties to notify the Court promptly upon completion of the arbitration.

IT IS SO REPORTED in Tampa, Florida, on August 25, 2026.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.